UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ARTURO ERNESTO LOPEZ-CANSECO<br><br><br>Defendant. | Criminal Case 25-cr-30034-MGM |

MEMORANDUM AND ORDER DENYING THE GOVERNMENT'S
MOTION FOR PRETRIAL DETENTION
(Dkt. No. 6)

I.       Relevant Background

Defendant Arturo Ernesto Lopez-Canseco ("Defendant") is charged by complaint with

one count of unlawful entry of a removed alien in violation of 8 U.S.C. § 1326(a) (Dkt. No. 4).

The government alleges that Defendant is a Mexican national without legal status in the United

States ("U.S.").  The affidavit in support of the complaint alleges that, in April 2022, the United

States Border Patrol ("USBP") encountered Defendant, ascertained that he had entered the

United States illegally, and removed him from the U.S. on April 8, 2022.  In connection with his

removal, the USBP took a print of his index finger and entered it into a database (Dkt. No. 4-1 at

2-3).  On a date after April 8, 2022, Defendant re-entered the U.S.  Following Defendant's re-

entry into the U.S., in or around September 2024, he was arrested by the Lenox, Massachusetts

Police Department for operating under the influence (Dkt. No. 4-1 at 3-4).  On or around

1

December 21, 2024, U.S. Immigration and Customs Enforcement ("ICE") became aware, based on a fingerprint match, that Defendant had re-entered the U.S (Dkt. No. 4-1 at 3 & n.2). He was arrested on May 6, 2025 (Dkt. No. 10).

The government has moved pursuant to the Bail Reform Act of 1984 ("BRA"), 18 U.S.C. § 3142(f)(2)(A), for pre-trial detention, contending that there is a serious risk that Defendant will flee (Dkt. No. 6). The government further contends that, if the court finds that Defendant poses a serious risk of flight, the court should further find that there are no conditions of pretrial release that will reasonably assure the appearance of Defendant as required. *See* 18 U.S.C. §3142(g). Defendant opposes the Government's request for pretrial detention. The court held hearings on the government's motion on May 6 and 7, 2025, and, at the conclusion of the May 7, 2025 hearing, took the government's motion under advisement (Dkt. No 12). Having carefully considered the parties' arguments, the court denies the government's motion for pretrial detention.

II.    Legal Standard

The BRA "provides … a two-step process through which the government may seek pretrial detention. *See* 18 U.S.C. § 3142(f)-(g)." *United States v. Ibarra*, No. 2:24-mj-00385-KFW-1, 2025 WL 27474, at *2 (D. Me. Jan. 3, 2025). "First, the government must prove that the case is eligible for pretrial detention because it concerns one of five categories of serious crimes, a serious risk that the defendant will flee, or a serious risk that the defendant will obstruct justice." *Id.* (citing 18 U.S.C. § 3142(f)). Second, if the government proves a serious risk of flight, "it must then prove that there is 'no condition or combination of conditions' that 'will reasonably assure the appearance of the [defendant] as required and the safety of any other

2

person and the community ....'" *Id.* (quoting 18 U.S.C. § 3142(e)); *see also United States v. Mejias-Mejias*, No. 1:25-mj-611, 2025 WL 846435, at *1 (D. Md. Mar. 18, 2025) (same).

Here, as in the *Ibarra* case, the government bases its motion for pretrial detention on its assertion that Defendant poses a serious risk of flight, *see* 18 U.S.C. § 3142(f)(2)(A), an assertion that the government must prove by a preponderance of the evidence. *See Ibarra*, 2025 WL 846435, at *2 (citing *United States v. Reynolds*, 609 F. Supp. 2d 108, 110 (D. Me. 2009)). The BRA does not offer guidance as to how a court should determine whether a defendant poses a "serious" risk of flight. Noting that "the adjective does not appear in other parts of the Bail Reform Act," *Meijas-Mejias*, 2025 WL 846435, at *2, courts have concluded that "Section 3142(f)(2)(A) requires more of the government than Section 3142(g)'s 'risk of nonappearance' showing that is more often addressed in detention hearings." *Id.; see also United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1138 (D. Idaho 2023) (reasoning that the government must show that there is a "great risk – beyond average – that the defendant will intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision"). Factors courts have identified for the purpose of this inquiry include, in a non-exhaustive list, incentive to flee, ability to flee, prior noncompliance with court orders, including prior failures to appear, ties to the jurisdiction, uses of aliases, potential punishment, length of residence, employment history, and substance abuse. *Meijas-Mejias*, 2025 WL 846435, at *2; *Figueroa-Alvarez*, 681 F. Supp. at 1142-45.

A majority of the courts that have considered the issue have held that "the fact that ICE may involuntarily remove a defendant does not establish their eligibility for pretrial detention as a serious risk under section 3142(f)(2)(A)." *Ibarra*, 2025 WL 27474, at *3 (citing *United States v. Ailon-Ailon*, 875 F.3d 1334, 1337 (10th Cir. 2017)); *see also United States v. Lopez*, No. 23-

CR-10269-AK, 2023 WL 8039318, at *2 (D. Mass. Nov. 20, 2023) ("I am persuaded that the BRA does not authorize detention based on a risk that Defendant will not appear for reasons beyond his control."). "Nevertheless, considering a defendant's immigration status – including the prospect of ICE detention and removal – and how that status may affect their risk of flight and nonappearance is consistent with the individualized assessment required by the Bail Reform Act." *Ibarra*, 2025 WL 27474, at *3.

III.    Analysis

At the detention hearing, the court stated that it was likely to conclude that the government had shown that Defendant posed a serious risk of flight. This was the conclusion reached by the *Ibarra* court in similar circumstances. *Ibarra*, 2025 WL 27474, at *3. The *Ibarra* court went on to deny the government's detention motion on the ground that there were conditions of release that could reasonably assure the defendant's appearance. *Id.* at *4. With all due respect, it appears to this court that there is an inevitable tension between a finding that a defendant poses a serious risk of flight and that there are, nonetheless, conditions that can reasonably assure his future appearances in court notwithstanding an ICE removal order or detainer that is likely to result in his immediate deportation on release. The conditions of release on which the *Ibarra* court relied to conclude that pretrial detention was not warranted are unlikely ever to become operative. For this reason and based on a review of the (sparse) evidence in this case and the decisions cited above, I find, on reconsideration, that the government has not shown a serious risk that Defendant will flee such that the government is entitled to the court in conduct a detention hearing. *See* 18 U.S.C. § 3142(f).

As to incentive to flee, at the detention hearing, defense counsel represented that Defendant comes from an impoverished area in Mexico where there are few employment

opportunities.  Although his immediate family lives in Mexico, and he therefore has strong family ties in his country of origin, he has advanced a credible reason why he would not voluntarily return to Mexico.  He has illegally crossed the Mexican-U.S. border twice.  While Defendant's re-entry after deportation may be said to demonstrate a disregard of an official or court order, it "equally demonstrates[s] his resolve to remain in … the United States." *Figueroa-Alvarez*, 681 F. Supp. 3d at 1146.  Defendant does not appear to have strong family or community ties in this jurisdiction, but he represented through counsel that he lives in this area because he has family members in Connecticut, a state immediately adjacent to Massachusetts.  He reported that he has lived in Berkshire County for some three years, during which time he was employed.  There is no evidence that he has the financial resources or the contacts that would enable him to flee this jurisdiction and resettle in a different state in this country.  On the question of Defendant's general trustworthiness, the government presented no evidence that Defendant has a history of substance use disorder or has used aliases to conceal his identity.  *See Meijas-Meijas*, 2025 WL 846435, at *4; *Figueroa-Alvarez*, 681 F. Supp. 3d at 1145.

According to the Probation Department, Defendant's criminal history is extremely limited.  He came to ICE's attention after he was arrested, in December 2024, for operating a motor vehicle while under the influence and negligent use of a motor vehicle.  The state district court entered continuances without a finding as to both of Defendant's state court charges, meaning that the charges are to be dismissed if Defendant satisfies certain conditions and does not re-offend before May 27, 2025.

The government has argued that Defendant would be motivated to flee by the potential two-year sentence on the federal charge of illegal re-entry after deportation.  With no significant criminal history, however, defendant likely faces a sentencing guideline range of between "zero

and six months, which reduces the likelihood that he would be overcome by his motivation to flee." *Ibarra*, 2025 WL 27474, at *5; *Figueroa-Alvarez*, 681 F. Supp. 3d at 1141-42. Completely "[a]bsent are indicia of prior noncompliance or avoidance of criminal proceedings or judicial supervision." *Meijas-Meijas*, 2025 WL 846435, at *4. To the contrary, following his December 2024 arrest on two state criminal charges, Defendant appeared in the state district court on three separate occasions when required by the court to do so, and was well on the way to resolving the state court charges when he was arrested for the federal offense of illegal re-entry after deportation. Overall, the evidence weighs against a finding that Defendant is motivated to disregard court orders.

The court's observation in the *Meijias-Mejias* case applies equally here. "In the end, the common hallmarks of serious flight risks do not appear in this case." *Meijias-Mejias*, 2025 WL 846435, at *5. Further, "the risk that Defendant will be deported and thus involuntarily be made absent from court does not constitute a serious risk of flight as that term is used in the BRA." *Lopez*, 2023 WL 8039318, at *4. Thus, based on the evidence before it, the court concludes that the government may not seek detention in this case. *Meijias-Mejias*, 2025 WL 846435, at *5. In accordance with the provisions of the BRA, the court will enter an order providing that Defendant is to be released on his personal recognizance, subject only to the conditions that he not commit a new federal, state, or local crime while on pretrial release and that he cooperate in the collection of a DNA sample if required to do so by law. 18 U.S.C. §3142(b). A form of release is attached hereto as Exhibit 1.

IV.    Conclusion

For the foregoing reasons, the government's motion for pretrial detention (Dkt. No. 6) is denied.

It is so ordered.

Date:  May 15, 2025                         Katherine A. Robertson
                                            KATHERINE A. ROBERTSON
                                            U.S. MAGISTRATE JUDGE